OPINION
Defendant-appellant, Carolyn Mounts, appeals her conviction in the Brown County Court on one count of knowingly filing a false report of child abuse or neglect in violation of R.C. 2921.14(A). Paul Mounts ("co-defendant"), Carolyn's husband since January 1991, was found not guilty of the same charge. Specifically, appellant avers that her conviction was not supported by legally sufficient evidence and was against the manifest weight of the evidence.
The events which led to this conviction transpired over a lengthy period of time. Before approximately 1980, appellant, then Carolyn Hicks, had a friendly relationship with Carol Johnson. In fact, appellant had known Carol Johnson since early childhood. Both appellant and Carol Johnson reside on Sardinia Mowrystown Road, Sardinia, Ohio. Originally, Carol Johnson and appellant were neighbors; however, there is now another house and trailer between their two residences. Due to a dispute between them, the relationship became strained and the friendship ended in 1980. The testimony regarding the exact nature of the dispute is conflicting. Carol Johnson's husband, David A. Johnson,[1]
testified that appellant was driven to various places and when he asked for money to cover gasoline expenses, appellant refused and "stormed out of the house." Appellant testified that the dispute arose because appellant refused to keep paying the Johnsons' phone bill after she married the co-defendant in 1991.
Soon after, the Brown County Department of Human Services ("Human Services") began receiving a series of anonymous letters suggesting that the Johnsons were abusing and neglecting their children.[2] As required by statute,[3] Human Services immediately began an investigation.
Pat Hopkins, who has worked for Human Services since 1988 and is currently an investigator, testified at trial that among the allegations in these anonymous letters were that Natasha was sexually abused by her father, that David was physically abused by his father, and that the Johnsons physically abused and neglected all the children. In order to investigate these charges, the children were often taken out of school so each one could be separately interviewed. Hopkins testified that, during all of her investigations, none of the children ever told her any abuse or neglect took place and that, in her professional opinion, the children were being truthful.[4]
Hopkins spoke to the Johnsons on multiple occasions about the charges, both at the Johnsons' residence and at Human Services. Carol Johnson estimated that she had contact with Human Services about once per week and that the investigations continued from 1981 until 1995. In approximately 1990, a physician examined Natasha for evidence of sexual abuse. The examination did not reveal any such evidence. In fact, during this entire time, neither Hopkins, nor anyone else at Human Services, was able to substantiate any claim of neglect or abuse of the children by the Johnsons. Before 1981, Carol Johnson testified that no one had ever made an allegation to Human Services or any other law enforcement agency that the Johnsons' children were being abused or neglected.
Besides investigating these charges, Hopkins began to suspect that all of the letters she received were coming from the same source. Originally, the letters were anonymous, but Human Services then received letters signed by appellant and sometimes the codefendant. After comparing the anonymous letters to the signed letters, Hopkins concluded that the anonymous letters were written by the same person. She based this conclusion on the nature of the charges, the language utilized in the letters, and similar grammar and spelling errors in the letters. Also, after the original handwritten letters, some of the subsequent letters were typewritten. The typewritten letters also appeared to be from the same source. Hopkins, despite her attempts, was never able to speak directly to appellant or the co-defendant. She testified that, on at least one occasion, appellant failed to keep a scheduled appointment with her at Human Services.
By September of 1993, Human Services, as well as other public officials (including various Brown County judges and prosecutors), had received letters making charges that Human Services could not substantiate. In response, the Brown County Prosecutor's Office hired Samuel Kelly Jones as a special investigator. Jones' main role was to independently determine who was writing the letters.
Jones estimated that the total number of letters involved was "a few hundred or more." Jones found that the language in the letters was similar, that all the letters were written in "the third part sense," and that the anonymous letters had a similarly written "x" for a signature. Later, Jones learned about an anonymous letter sent to the Ohio Supreme Court Disciplinary Council involving a Brown County prosecutor, Alan Durbin. The similarities in that letter allowed Jones to obtain enough evidence to obtain a search warrant for the Mounts' home. That search revealed a typewriter and, next to the typewriter, a list of names and addresses of Brown County public officials. The co-defendant later admitted to Jones that his wife had typed the anonymous typewritten letters.
According to Jones, the letters not only alleged abuse and neglect, but also that the Johnsons (in some cases in concert with public officials) were involved in drug trafficking at the Sardinia Church of Christ. This church was attended by the Johnsons and appellant. Like the other written allegations of abuse and neglect, Jones concluded the reports of drug trafficking came from one source.
Jones' investigation eventually led to an indictment of appellant on twenty-five counts of knowingly filing a false report of child abuse or neglect. On November 2, 1994, appellant pled no contest to one count of knowingly filing a false report of child abuse or neglect and was placed on probation. As part of the plea agreement, all the other counts were dismissed by the prosecutor. A condition of probation was that appellant cease contact with the Johnsons and not file any more reports against the Johnsons alleging abuse or neglect with Human Services or any other county, municipal, or law enforcement authorities. Appellant testified that she understood the conditions of her probation.
However, the letters did not stop arriving after November 2, 1994. Judge Thomas F. Zachman of the Brown County Court testified that among the numerous letters he received were two letters signed by appellant and the co-defendant: One dated May 1, 1995 and the other dated May 8, 1995. The two letters led to two counts of knowingly filing a false report of child abuse or neglect being filed against appellant and the co-defendant. Following a trial by jury on June 20, 1996, appellant was found not guilty of the count based on the May 1 letter and guilty of the count based on the May 8 letter. The co-defendant was found not guilty on both counts. Appellant filed a timely notice of appeal.
In her first assignment of error, appellant argues that her conviction is not supported by legally sufficient evidence. The issue of legal sufficiency is whether the verdict of the jury can be supported as a matter of law. State v. Thompkins (1997),78 Ohio St.3d 380, 386. Upon appellate review, the appropriate standard is whether, reviewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found appellant guilty beyond a reasonable doubt. State v. Jenks (1991), 61 Ohio St.3d 259, 273.
R.C. 2921.14(A) states that "[n]o person shall knowingly make or cause another person to make a false report * * * alleging that any person has committed an act or omission that resulted in a child being an abused child * * * or a neglected child * * *." Appellant argues that the May 8 letter does not allege an act or omission of abuse or neglect as required by R.C. 2921.14 because the letter does not discuss specific acts or omissions of abuse. However, R.C. 2921.14 does not require any particular degree of specificity. On page two of the May 8 letter signed by appellant, the following is written: "Judge Zachman it is not against law to report child abuse. We break the law if we know there is abuse and don't report abuse. This family not only abuses us but abuses the kids." (Italics added.) The foregoing excerpt clearly demonstrates that appellant was once again reporting some "act or omission" of abuse by the Johnsons. In the context of the numerous allegations of abuse discussed at trial by, inter alia, Hopkins and Jones, appellant's statement that the Johnsons abuse the children is sufficient to put Judge Zachman, the recipient of the letter, and Human Services on notice that appellant was once again alleging an act or omission of abuse.
At trial, a tape was played in which Jones, after giving appellant her Miranda rights, questioned appellant about the May 8 letter. Included in the tape was the following exchange between Jones and appellant:
 MR. JONES: I'm going to show you another letter. This is dated May 8th, 1995. this is also a photocopy. It's not the original. And it's to Judge Zachman.
I'll let you take a look at it.
* * *
 MR. JONES: As it says here Judge Zachman, it's not against the law to report child abuse. We break the law if we know there is child abuse and don't report abuse. This family not only abuses us but abuses their children. * * *
 Again this line here the family not only abuses us but abuses their kids.
 Okay, this is the same thing that you're on probation for is reporting the abuse.
 CAROLYN MOUNTS: What happens if one of their children dies?
 MR. JONES: Well, we've been through this before Mrs. Johnson, or excuse me, Mrs. Mounts.
 And I've explained it to you. You're on probation for the same thing. Back in 1994.
 I don't know how to make it any clearer that you are not to report it at this point because you are on probation.
 CAROLYN MOUNTS: Just let their children be killed?
 MR. JONES: Well, again, I really don't know what else to tell you. You're directed by the Court not to report it.
 CAROLYN MOUNTS: I was writing to the Judge. It said in our, in the paper that they told us not to do it to the Human Services or any help person.
MR. JONES: All right.
Appellant, later in the tape, denied she was alleging abuse in the letter. However, a reasonable trier of fact could find that, based upon the May 8 letter, the tape, and past written allegations, appellant was once again alleging that the Johnsons were abusing their children. Appellant's first assignment of error is overruled.
In the second assignment of error, appellant argues that her conviction was against the manifest weight of the evidence. An appellate court acts as a "thirteenth juror" and reviews the trier of fact's resolution of the case. Thompkins,78 Ohio St.3d at 387. "The court, reviewing the entire record, weighs the evidence and all reasonable inferences, considers the credibility of witnesses, and determines whether in resolving conflicts in the evidence, the jury clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered. The discretionary power to grant a new trial should be exercised only in the exceptional case in which the evidence weighs heavily against the conviction." Id.
Appellant first argues that since the co-defendant also signed the May 8 letter and was acquitted of filing a false report of child abuse or neglect, the conviction is against the manifest weight of the evidence and will result in a miscarriage of justice. Assuming, arguendo, that the verdicts are inconsistent, it is well-settled that inconsistent verdicts do not alone provide an adequate cause for reversal of a conviction. Dunn v. United States (1932), 284 U.S. 390, 394, 52 S.Ct. 189, 191. This rule applies to co-defendants in a joint trial. U.S. v. Dotterweich (1943), 320 U.S. 277, 279, 64 S.Ct. 134, 135.
However, a review of the record does not even indicate that the verdicts are inconsistent. The record demonstrates that a trier of fact could reasonably find that the role of the co-defendant and appellant in the letter writing differed, and also that both the motive and credibility of the co-defendants parted in many respects. The singular fact that both appellant and the co-defendant both signed the May 8 letter is not dispositive of the issue that was before the jury.
First, appellant indicated to Jones that she had written the May 8 letter and many of the past letters. The record does not support that the co-defendant was ever involved in actually writing letters to Human Services or anyone else regarding abuse and neglect by the Johnsons. Since the record provides ample facts to conclude that appellant was the author of the May 8 letter, one reasonable interpretation is that appellant was the primary actor. Second, the circumstances of appellant's and the co-defendant's relationship to the Johnson family is different. The record does not indicate the co-defendant ever had any type of friendship with the Johnsons. Appellant knew Carol Johnson since early childhood. The dispute in 1980 involved appellant and the Johnsons. Soon after, in 1981, appellant began writing letters alleging abuse and neglect, but the co-defendant did not marry appellant until 1991. A reasonable trier of fact could conclude that appellant had many more reasons to knowingly file false reports.
The record also indicates that many of the unproven allegations came exclusively from appellant. These allegations raise considerable questions about appellant's credibility. Appellant testified that before her marriage to the co-defendant, she had visited the Johnsons' home and it was dirty and filthy. She also stated Carol Johnson gave the children whiskey to help them sleep. Also, appellant testified that the allegation of sexual abuse of Natasha by Mr. Johnson was based on what Natasha told directly to appellant. This allegation was the subject of an investigation by Human Services, including a physical examination of Natasha, which never produced any corroborating evidence. In fact, the record does not indicate any of appellant's allegations were ever shown to have any merit.
Appellant also admitted at trial that co-defendant had previously indicated to Jones that appellant controlled the typewriter and had typed letters alleging abuse or neglect. Jones testified to the similarity of the typewritten and handwritten letters. Also, Jones' search of the Mounts' home revealed the list of names and addresses of Brown County officials found next to a typewriter. Despite this, appellant denied even knowing how to type. These facts provided the trial court with reason to question appellant's credibility.
The record provides overwhelming evidence for the trier of fact to conclude the May 8 letter is a false report. Both appellant and the co-defendant indicated the May 8 letter was more of a general complaint of harassment than a report of abuse or neglect. However, based upon the overall record, the jury could easily have concluded that appellant was responsible for knowingly writing false allegations and that the co-defendant, by signing the letter, merely followed the will of appellant.
Finally, appellant's other arguments, although couched in terms of manifest weight of the evidence, are more specifically objections to the improper admittance of evidence. Appellant essentially claims that the admission of state exhibit 3, a series of letters appellant admitted having written, and the testimony of Jones regarding his investigation of those letters, created a distorted record that allowed the jury to lose its way. We disagree.
The letters were admitted over the objection of appellant's counsel at trial. Counsel for appellee, the state of Ohio, indicated that the letters were admitted under Evid.R. 404(B) to establish the knowledge of appellant and also absence of mistake. Evid.R. 404(B) states that:
 (B) Other crimes, wrongs or acts. Evidence of the other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show that he acted in conformity therewith. In may, however, be admissible for other purposes, such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident.
Evid.R. 404(B) is an exception to the common law rule that evidence cannot be admitted merely to show a defendant's propensity to engage in other criminal acts. State v. Broom (1988), 40 Ohio St.3d 277, 281-82. See, also, R.C. 2945.59. If there is "substantial proof" the other act was committed by defendant and it qualifies as an exception under Evid.R. 404(B), the evidence is admissible. State v. Lowe (1994), 69 Ohio St.3d 527,530.
The evidence is substantial that appellant wrote every letter presented at trial. The letters in exhibit 3 were admitted to show that appellant had engaged in a similar course of conduct and was aware that the previous letters had resulted in her conviction and subsequent probation. Appellant was aware that Human Services felt that none of the allegations had any validity. The previous letters also show the word "abuse" was not accidentally used, but instead reflected a continuing pattern by appellant of knowingly filing false reports of child abuse and neglect. Jones' testimony was relevant to establish the past pattern of knowingly filing false reports and appellant's awareness of the consequences. Appellant's second assignment of error is overruled.
Judgment affirmed.
POWELL, P.J., and WALSH, J., concur.
[1] The Johnsons were married in 1979.
[2] The children include Natasha, born in 1978; David, born in 1980; and Tonya, born in 1983. Natasha was adopted by David A. Johnson.
[3] Upon an allegation of neglect, physical or sexual abuse, Human Services is required, inter alia, to commence an investigation within twenty four hours. R.C. 2151.421(F)(1). Human Services is then required to submit a report to law enforcement. Id. Human Services must then make recommendations to the local prosecutor (or city law director) "that it considers necessary to protect any children that are brought to its attention." R.C.2151.421(F)(2).
[4] Hopkins testified she was aware of many cases in which both the children and parents denied abuse but the cases were still successfully prosecuted. In fact, she testified that denial is typical. In this case, however, Hopkins found not only were the children credible, but the investigation yielded no evidence of abuse.